IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VONNIE L. BEYLER, | ) Case No. 5:22-cv-2283 |
| | ) |
| Plaintiff, | ) JUDGE CHRISTOPHER A. BOYKO |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

**I.     Introduction**

Plaintiff, Vonnie L. Beyler, seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.  This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b).  Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Beyler's applications for DIB and SSI be affirmed.

**II.    Procedural History**

On May 5, 2021, Beyler filed applications for DIB and SSI.  (Tr. 16, 82-83, 99).  Beyler alleged a disability onset date of August 31, 2020 (Tr. 16, 82, 228), and asserted she was disabled due to back pain from two fractured vertebrae, cardiomyopathy and migraines.  (Tr. 84, 100, 251).  The Social Security Administration denied Beyler's applications at the initial level, (Tr. 84-90), and then upon reconsideration, (Tr. 100-113).  Beyler requested a hearing.  (Tr. 140-

141). On June 22, 2022, ALJ Louis Aliberti heard the matter and denied Beyler's claims in a July 20, 2022 decision. (Tr. 12-32). Beyler requested review of the decision by the Appeals Council. (Tr. 215-217). On October 28, 2022, the Appeals Council denied Beyler's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7). On December 20, 2022, Beyler filed a complaint to obtain judicial review. ECF Doc. 1.

**III.    Evidence[1]**

    **A.    Personal, Educational, and Vocational Evidence**

Beyler was born on April 21, 1961 and was 59 years old on the alleged onset date. (*See* Tr. 84, 228). Beyler had a high school education and later completed specialized job training or trade/vocational school in horticulture. (Tr. 225). Beyler's disability report and work history report, and her initial disability determinations indicate that her past work included: "cleaner housekeeping," "resident care aide," manager fast food services," "commercial cleaning," and "marketing." (Tr. 93, 100, 252-253).

In relevant part, Beyler stated in her August 2021 Work History Report that she worked at Bell Stores Domino Pizza ("Bell Stores") as "Lead Pizza Supervisor." (Tr. 287). She described her job duties as running the end of the day results on the cash register, taking customer orders for pizza over the phone, ordering supplies, and making pizzas. (*Id.*). Under the section for "Lifting and Carrying," she stated that "[a]t times" she would lift meat products for pizza that weighed approximately 20 to 25 pounds and then move them "maybe" 15 feet from the pallet to the freezer. (*Id.*). Beyler indicated that the weight she frequently lifted during her workday was less than ten pounds. (*Id.*).

---

[1] Beyler's arguments do not challenge the ALJ's assessment of any of the medical evidence, treatment of the medical opinion evidence, or conclusion that Beyler had the residual functional capacity to perform a reduced range of light work. *See generally* ECF Doc. 8. Accordingly, in contrast to most Social Security appeals, a detailed description of the medical evidence and medical opinion evidence is unnecessary.

2

B. **The ALJ Hearing**

Beyler testified at the ALJ hearing. (Tr. 53-67). Regarding her job at Bell Stores, she testified that she had worked there as a full-time manager for approximately one year and, as part of her inventory duties, lifted at least 45 pounds when unloading inventory from trucks. (Tr. 57-58).

Beyler also testified that she worked part-time at Eldorado Stone ("Eldorado") in 2007 and 2008 doing office work, describing Eldorado as a company that "sold stones for building and decorating." (Tr. 57, 59). When asked for her job title, Beyler was unsure at first and then described her position as a receptionist with some inventory control and stated she specialized in the sampling department. (Tr. 59). She testified that the heaviest weight she lifted at this job was up to 25 pounds, depending on the sample. (*Id.*). When asked to clarify her prime duty at Eldorado, she responded that her prime duty was as a receptionist. (Tr. 60). She further testified that she did a lot of sitting and answering the phone. (*Id.*). When asked how often she was required to lift 25 pounds, she responded that she could not put a number on it and explained that it depended on the order from a customer and how many samples they wanted. (*Id.*).

Suman Srinivasan, a Vocational Expert ("VE") to whose qualifications Beyler stipulated, also testified at the ALJ hearing. (Tr. 67-80). After reading and listening to Beyler's testimony regarding her work history, the VE classified Beyler's past work at Bell Stores as: "fast food services manager, [*Dictionary of Occupational Titles* ("DOT") code] #185.137-101, skilled, SVP 5, light per the DOT, medium as performed." (Tr. 69). The VE classified Beyler's past work at Eldorado as: "receptionist, [DOT code] #237.367-038, semi-skilled, SVP 4, sedentary per the DOT. . . . appears medium as performed." (*Id.*). The ALJ asked the VE whether a hypothetical individual with Beyler's age, experience, and residual functional capacity ("RFC") could perform any of Beyler's past work. (Tr. 70). The VE stated that such an individual could not

3

perform Beyler's past work as a receptionist as it was *actually* performed, but the individual could perform the receptionist job as *generally* performed per the DOT. (*Id.*). The VE also stated that the hypothetical individual could perform the fast food services manager job as generally performed per the DOT, but not as actually performed. (*Id.*).

On cross-examination, Beyler's counsel asked the VE whether unloading trucks was part of the DOT description for fast food services managers and he responded:

> And again . . . each employer has different expectations, and it is quite entirely possible that in some jobs, managers are expected to help with loading and unloading. But I am -- yeah, I will look at the DOT. It directs, coordinates, and participates in the preparation of cocking, wrapping food, collecting of money, activities -- coordinates activities of workers, engages in keeping records, delivery of foodstuffs, interviews, and hires. It does not expressly say helps with loading and unloading, but I do believe that that you know, it's not a daily occurrence, trucks tend to come in twice a week, if that. But I did indicate that she lifted up to 45 pounds, and therefore, the work was done at the medium level, sir.

(Tr. 74-75).

Beyler's counsel then asked the VE whether he considered whether Beyler's work at Bell Stores might be a composite job, and the VE said he "would be happy to consider it." (Tr. 75). Counsel asked what job would describe the work if Beyler had "merely described unloading trucks, product, and putting it into the stock room." (*Id.*). The VE stated that before he could give the right title, he needed to know how often those tasks were done, "Was it on a daily or weekly basis, how much of the time during the work day was she – did she do it?" *Id.* In response, Beyler then testified that: (i) product in the freezer "had to be rotated almost daily," and described lifting bins of dough that weighed "more than 20 pounds;" and (ii) the truck-unloading happened once a week. (Tr. 75-76). After Beyler provided this information, the VE stated that he could provide the DOT job title of materials handler (code # 929.687-030) that was performed generally at a heavy level per the DOT. (Tr. 76). He further added: "But again, going

4

with the 45 pounds, I'm going to say that was done at medium. The composite job . . . was probably performed at a medium level." (*Id.*).

Addressing Beyler's job as a receptionist at Eldorado, Beyler's counsel asked the VE whether there was another job title that would describe packing and shipping stones that weighed 25 pounds. (Tr. 77). The VE responded that he did not identify Beyler's job at Eldorado as a composite job because it did not seem that the packing and carrying of stones was a consistent daily or a weekly occurrence nor that it was an essential function of the job. (*Id.*). When asked whether shipping stones was a daily occurrence, Beyler responded that: (i) it varied per customer; (ii) some days she would lift and carry several samples; (iii) others days she would handle no samples; and (iv) "the sampling aspect was probably more days than not." (Tr. 77-78). Beyler further clarified that she did not box or ship out the samples, she only took the samples to shipping and only carried the stones a "rather close" distance. (Tr. 77-78).

After Beyler's testimony, her counsel asked the VE whether he would characterize the carrying of the stone samples as incidental or essential work to her job as a receptionist at Eldorado. (Tr. 79). The VE responded:

> Based on the frequency with which she said she did this, I would be happy to -- to provide you the -- the job title of a store labor . . . #922.687-058, unskilled, SVP 2, and medium per the DOT. Medium as she performed this part of the job, sedentary as she performed the receptionist position.

(Tr. 79-80).

### IV. The ALJ's Decision

On July 20, 2022, the ALJ issued an unfavorable decision, finding that Beyler was not disabled under the Social Security Act based on Beyler's May 5, 2021 applications for DIB and for SSI. (Tr. 16-42). In doing so, the ALJ determined at Step Four that Beyler had the RFC to perform work at a light exertional level, except that she was further limited in the following respects:

5

- Can never climb ladders, ropes, or scaffolds but can frequently climb ramps and stairs, can occasionally stoop, and can frequently crouch, kneel, and crawl; and

- Can never work at unprotected heights or around moving mechanical parts.

(Tr. 24-35). The ALJ determined that Beyler had "past relevant work" as a "Fast Food Services Manager" and "Receptionist," as well as a "Resident Care Aide" and a "Commercial Cleaner."[2] (Tr. 35-37).

The ALJ directly addressed Beyler's assertion that the Fast Food Services Manager and Receptionist positions were composite jobs and rejected this argument. (Tr. 38-40). The ALJ provided the following analysis to support his finding that the Beyler's prior position at Bell Stores did not qualify as a composite job:

> With attention first directed to the Fast Food Services Manager, Ms. Beyler had spoken about this job in her responses to the Work History Report and stated that she had main job duties of running the cash register, taking telephone orders for pizzas from customers, making the pizza in the ovens, and ordering supplies ([Tr. 287]). By contrast, she wrote that "at times" she carried orders of meat products for the pizzas from a pallet and into a freezer, over a distance of 15 feet and requiring her to lift 20 to 25 pounds (*Id.*). At the hearing, Ms. Beyler testified to heavier lifting up to 45 pounds when doing inventory of the foods in the freezer and when, on a daily basis, rotating stock in the freezer. Such testimony is fully subsumed within the difference between how she had actually performed the main job duties of the Fast Food Services Manager at the medium physical [sic] demand level with, per testimony from vocational expert Suman Srinivasan, how that occupation is generally performed at the light level.
>
> Thus, the sole inquiry for whether the Fast Food Services Manager is a composite job relates to the one other identified job task of carrying orders of food products from a pallet into a freezer, which Ms. Beyler affirmed in testimony as unloading food products from trucks, and whether it was a "main" part of her job duties or was merely "incidental." In her August 2021 response to the Work History Report, Ms. Beyler stated only that "[at] times" she would need to put meat products for pizza away into the freezer, carrying them maybe 15 feet of distance from the pallet, and requiring her to lift approximately 20 to 25 pounds ([Tr. 287]). Ms. Beyler's initial testimony about the required unloading at the pizza shop also generally did not convey a strong impression that this was a daily or otherwise more than

---

[2] Beyler's past work as a "Resident Care Aide" and "Commercial Cleaner" is not discussed in more depth because Beyler has not argued that those positions were composite jobs and, regardless, the ALJ later determined that Beyler could not perform those jobs as they were actually performed or as they are generally performed in the national economy. (Tr. 41).

6

> occasional component of her job duties. Upon further questioning at a later part of the hearing, when the vocational expert was fielding questions from her attorney, Ms. Beyler expressly testified that the truck-unloading duty was a weekly job task, which fits within the example above and as merely an incidental job duty. Accordingly, per both written report and testimony from the claimant, the unloading of food products from trucks was merely an incidental job task that does not constitute a composite job between the Fast Food Services Manager and any other occupation.

(Tr. 39-40).

Turning to Beyler's prior position at Eldorado, the ALJ provided the following analysis to support her finding that the job did not qualify as a composite job:

> Second, in terms of the Receptionist, Ms. Beyler did not discuss this 2007-2008 job in the Work History Report or other written statements, and thus her testimony is the sole source of information about the daily and other demands of this job. She testified that the work for Eldorado [S]tone, which was a company who manufactured stones to be used in building and decorating, was primarily "office work" with "a lot of sitting" for answering phones and managing inventory control in the company's sampling department. She testified that, at times and varying by the customer, she needed to assist with packing and shipping samples of the stones out to customers, which entailed lifting up to 25 pounds. She was unable to specify how frequently versus occasionally she did this task of packing and shipping samples because it varied per customer, and at most she could offer that some customers did not require the samples whereas others did.
>
> This uncertainty about the frequency of the packing and shipping of sample products to customers is not persuasive that it was more than an incidental job duty. Moreover, the undersigned notes that the DOT does state that Receptionists "may perform variety of . . . other duties pertinent to type of establishment," which would encapsulate job-specific demands that might entail what Ms. Beyler did for Eldorado Stone and thus also not invoking the existence of a composite job, but rather showing that, as shown above, she actually performed that occupation at the medium physical demand level in 2007-2008. Accordingly, the packing and shipping of sampled products is not shown to be a separate or otherwise more than incidental job task that does not constitute a composite job between the Receptionist and any other occupation.

(Tr. 40). For both the Fast Food Services Manager and Receptionist positions, the ALJ further determined that neither position was a composite job with respect to the separate job titles – "Material Handler" and "Stores Laborer" – "offered *arguendo*" by the VE in response to questions by Beyler's counsel as to how such separate jobs would be classified. (Tr. 40 nn. 1-2).

7

Referencing the VE's testimony, the ALJ determined that Beyler's RFC allowed her to perform her past relevant work as a Fast Services Manager and as a Receptionist as those positions are generally performed in the national economy but not as she actually performed them. Based on these findings, the ALJ determined that Beyler had not been under a disability from August 21, 2020 through the date of the decision. (Tr. 41).

V.      **Law & Analysis**

    A.      **Standard of Review**

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones*, 336 F.3d at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for evidentiary support. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783 ("It is not our role to try the case de novo." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

### B. Step Four: Ability to Perform Past Relevant Work

#### 1. The Parties' Arguments

Beyler argues that the ALJ's conclusion that she could perform her past work as a "Receptionist" or "Fast Food Services Manager" was not supported by substantial evidence and lacked a logical bridge to the evidence, because the ALJ ignored significant evidence and summarily dismissed the VE's testimony that those positions constituted composite jobs. ECF Doc. 8 at 8-17. Beyler argues that the ALJ erred with respect to his conclusion that the fast food

9

services manager position was not a composite job because he: (i) focused solely on the weekly truck unloading; (ii) ignored Beyler's testimony that she lifted bins of dough and rotated product in the freezer daily; and (iii) summarily dismissed the VE's testimony and mischaracterized it as an *arguendo* discussion. *Id.* at 11-13. Beyler asserts that the VE provided the additional job title of "materials handler" after Beyler testified about performing additional, heavier tasks and then the VE testified that the composite job was performed at a medium level of exertion. *Id.* at 13.

With respect to the receptionist position, Beyler argues that the ALJ erred because he concluded that Beyler's additional duties in lifting stone samples was an incidental job duty – based on uncertainty about the frequency of that activity – but he failed to consider the entire record. *Id.* at 14-15. Specifically, Beyler asserts that the ALJ failed to reference or consider Beyler's testimony clarifying that "she could have lifted and carried three to five samples out a day, but another day might not have had any" and "the sampling aspect was probably more days than not." *Id.* Beyler further argues that the VE provided the job title of "store laborer" to describe Beyler's receptionist position but the ALJ again summarily dismissed the VE's testimony in a footnote. *Id.* at 15-16.

The Commissioner responds that the ALJ applied proper legal standards and reached a decision supported by substantial evidence in finding that Beyler could perform her past relevant work as a receptionist and fast food services manager. ECF Doc. 11 at 4-7. First, the Commissioner argues that substantial evidence supports the ALJ's determination that Beyler's past work as a receptionist was not a composite job, citing both Beyler's testimony that her work for Eldorado was primarily office work that involved a lot of sitting and answering the phone and also her inability to specify how frequently she had to lift the 25 pounds. *Id.* at 4. The Commissioner argues that the ALJ could rightfully determine that Beyler's job as a receptionist was not a composite job because, although a receptionist job is generally performed at a

sedentary level, some jobs might entail functional demands and duties that are significantly in excess of those generally performed by other employers in the national economy. *Id.* at 4-5 (citing SSR 86-61). Second, the Commissioner argues that substantial evidence supports the ALJ's determination that Beyler's past work as a fast food services manager was not a composite job, citing Beyler's response in her Work History Report that she only needed to carry meat products to the freezer "at times" at a distance of "maybe 15 feet" and her testimony that the truck-unloading was a weekly task. *Id.* at 5-6. The Commissioner further argues that Beyler's contention that her job at Bells Store was a composite job as a fast food services manager and as a material handler is faulty because the description of her job duties lacks nearly every characteristic listed in the DOT's description of the material handler job other than loading and unloading materials. *Id.*

In her reply brief, Beyler argues that both the ALJ and the Commissioner relied on the VE's initial testimony to conclude that Beyler's past work as a receptionist was not a composite job but they both ignore the VE's later testimony when he provided the job title of stores laborer after Beyler provided additional information about her work duties. ECF Doc. 13 at 2-3. In response to the Commissioner's arguments as to the fast food services manager position, Beyler argues that the both the Commissioner's brief and ALJ's analysis fail to address: (i) the VE's testimony that "the frequency with which Ms. Beyler performed other job duties was consistent with the work of a material handler"; (ii) Beyler's testimony clarifying that she moved a lot of inventory and she lifted and rotated inventory that weighed more than 20 pounds daily; and (iii) that the VE added the job title of material handler in response to Beyler's clarifying testimony. *Id.* at 4-5. Beyler concludes that the ALJ failed to build a logical bridge to his conclusions and therefore this court cannot uphold the ALJ's decision. *Id.* at 5-6.

11

## 2. Law and Analysis

Beyler's general argument on appeal is that she lacks the capacity to perform her past relevant work and the ALJ's decision to the contrary is in error. At Step Four, the claimant has the burden to establish that she is unable to perform her past relevant work in light of her RFC. 20 C.F.R. § 404.1520(a)(4)(iv); *see also Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (explaining that a claimant challenging a finding that she was able to perform past relevant work had "fail[ed] to provide [the court] with the factual record [the court] need[ed] to find in her favor"). Generally, if a claimant can perform her past relevant work, she is "not disabled" and the evaluation stops. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). In evaluating whether a claimant is able to perform her past relevant work, an ALJ: (1) will ask the claimant for information about the past work (duties, requirements, etc.); and (2) may consult other sources, such as VE testimony or the DOT. 20 C.F.R. § 404.1560(b); *see also* SSR 00-4p, 2000 SSR LEXIS 8, at *4 (Dec. 4, 2000) ("We may also use VEs and VSs at these steps to resolve complex vocational issues.").

Social Security Ruling 82-61, addresses this evaluation process and provides that a claimant is "not disabled" if she maintains the RFC to perform: (i) the particular functional demands and job duties of a past relevant job as she actually performed it; or (ii) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. 1982 LEXIS 31, at *4; *see also* 20 C.F.R. § 404.1560(b)(2). Here, the ALJ determined that Beyler was not disabled because she had the RFC to perform her past work as a fast food services manager and as a receptionist as those jobs are generally performed in the national economy. (Tr. 41). Beyler challenges the ALJ's disability determination on the grounds that her past work as a fast food services manager and as a receptionist qualified as

12

"composite jobs" and therefore the ALJ should not have considered her ability to perform her past work as it is generally performed in the national economy. ECF Doc. 8 at 9-17.

There is an exception to the general rule when a claimant's past relevant work is found to be a "composite job." Specifically, when a claimant's past relevant work qualifies as a composite job, then the ALJ should not consider the work "as generally performed in the national economy," but must solely consider whether the claimant can perform her past relevant work as she *actually* performed it. Program Operations Manual System ("POMS") DI 25005.020; SSR 82-61, 1982 LEXIS 31, at *2; *see Dempsey v. Saul*, No. 1:18CV2806, 2020 U.S. Dist. LEXIS 64112, at *8 (N.D. Ohio Apr. 13, 2020); *Geibig v. Comm'r of Soc. Sec.*, No. 16-14290, 2018 U.S. Dist. LEXIS 48831, at *21-22 (E.D. Mich. Mar. 26, 2018) (explaining that "[a] finding that the past relevant work is a composite job creates an exception to the rule that the Step Four finding can be supported by the ability to do the job as actually performed or as generally performed in the national economy.") (citing SSR 82-61, 1982 SSR LEXIS 31 at *3).

Composite jobs contain "significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61, 1982 SSR LEXIS 31, at *5; *Linda H. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00343, 2022 U.S. Dist. LEXIS 186180, at *11 (S.D. Ohio Oct. 11, 2022). POMS provides that past relevant work may qualify as a composite job "if it takes multiple DOT occupations to locate the *main duties* of the [past relevant work] as described by the claimant." POMS DI 25005.020 (emphasis added); *Leeson v. Comm'r of Soc. Sec.*, No. 2:14-cv-335, 2015 U.S. Dist. LEXIS 122150, at *53 (S.D. Ohio Sep. 14, 2015). Notably, a claimant's prior work "may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." SSR 82-61, 1982 LEXIS 31, at *5. Accordingly, a job that – as performed – involves responsibilities beyond those outlined in the DOT does not necessarily make it a composite job and an inability

13

to perform such "excessive functional demands" does not render a claimant disabled under the Act. *Id.*

Beyler argues that the ALJ erred in refusing to classify her past work as a fast food services manager at Bell Stores and as a receptionist at Eldorado as composite jobs. She contends that those positions qualified as composite jobs because: (i) at Bell Stores, she was required to carry and lift inventory from a delivery truck once a week and also lift and rotate inventory on a daily basis; and (ii) at Eldorado, she was required to lift and carry material samples weighing up to 25 pounds a short distance to the shipping office. Because it was her burden to establish these positions as composite jobs, Beyler needed to prove that her lifting and carrying responsibilities were "main duties" for both positions. POMS DI 25005.020; *see* SSR 82-61, 1982 SSR LEXIS 31, at *5; *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018); *Reed v. Berryhill*, 337 F. Supp. 3d 525, 529 (E.D. Pa. 2018) ("In other words, a composite position must involve additional 'main duties' from another DOT position, rather than 'merely excessive function[s] with the job duties from one DOT position.'").

The ALJ considered the record and determined that the various lifting and carrying requirements for both positions were incidental job tasks and not "main duties" for either position. (Tr. 39-40). Despite Beyler's arguments to the contrary, I find that the ALJ's decision is supported by substantial evidence. With regard to the receptionist position, Beyler testified that she did "office work" for Eldorado, her primary duty was as a receptionist, and she did a lot of sitting and answering the phone. (Tr. 57, 59-60). When testifying as to how frequently she performed the task of carrying stone samples to the shipping office, Beyler was unable to provide a definite answer. She stated that she could not put a number on it, it could have been up to five times in a day, it did not occur on some days, and it probably occurred more days than not. (Tr. 60, 78). It was the ALJ's responsibility to make the factual determination on whether that

14

testimony was sufficient to classify the work as a composite job. Based on Beyler's evidence, it was reasonable for the ALJ to determine that the task of carrying stone samples to the shipping office did not occur frequently enough to be considered a significant element or "main duty" of her job at Eldorado.[3]

Beyler's primary contention on appeal is that the ALJ failed to build a logical bridge between the evidence and his "composite job" conclusions. Beyler argues that the ALJ failed to consider the portion of Beyler's testimony that clarified the frequency with which she carried the various stone samples. ECF Doc. 8 at 15. She specifically references her statements that "she could have lifted and carried three to five samples out a day, but another day might not have had any" and that "the sampling aspect was probably more days than not." *Id.* First, an ALJ is not required to discuss or even cite every piece of evidence in his opinion. *See Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *Jenkins v. Colvin*, No. 5:15-CV-1165, 2016 U.S. Dist. LEXIS 26105, at *28 (N.D. Ohio Feb. 11, 2016) ("Although an ALJ is required to *consider* all of the evidence in the record, he is not required to *discuss* each item of evidence in [his] opinion." (alternation in original)), *report and recommendation adopted*, No. 5:15 CV 1165, 2016 U.S.

---

[3] It is unnecessary to discuss whether substantial evidence supports the ALJ's determination that the fast food services manager position was a composite job because: (i) there is substantial evidence to support the ALJ's conclusion that the receptionist position was not a composite job; and (ii) that finding is sufficient to support the ALJ's ultimate determination that Beyler could perform her past relevant work and is therefore not disabled. That said, substantial evidence also supported the ALJ's determination that Beyler's past work at Bell Stores was not a composite job but was solely as a fast food services manager, given: (i) the Work History Report stated that Beyler's main duties were running the end of day results on the cash register, taking telephone orders for pizzas from customers, making pizzas, and ordering supplies, (Tr. 287); (ii) the Work History Report stated that Beyler would lift meat products for pizza "at times" over a distance of "maybe 15 feet", (Tr. 287); (iii) Beyler testified at the ALJ hearing that she lifted "up to 45 pounds" when unloading inventory and this occurred once a week, (Tr. 58, 75-76); and (iv) Beyler testified during the cross-examination of the VE that inventory weighing more than 20 pounds was rotated daily, (Tr. 76). It was not unreasonable for the ALJ to determine that the weekly unloading of the truck and the once-a-day rotation of freezer inventory did not occur with enough frequency to qualify as main duties of her past position at Bell Stores. *See, e.g.*, *Sanders v. Comm'r of Soc. Sec.*, No. 1:20-cv-861, 2022 U.S. Dist. LEXIS 36859, at *2-4 (W.D. Mich. Mar. 2, 2022).

Dist. LEXIS 26095 (N.D. Ohio Mar. 1, 2016). Second, the ALJ stated that Beyler was unable to specify how frequently she carried the stone samples because it "varied per customer, and at most she could offer that some customers did not require the samples whereas others did." (Tr. 40). This broad statement does not clearly or necessarily demonstrate that the ALJ failed to consider all of Beyler's testimony. Moreover, none of the testimony referenced by Beyler undercuts the ALJ's finding that the frequency of the stone carrying task was uncertain. Thus, this specific argument that the ALJ "cherry-picked" the record is without merit.

Beyler further contends that the ALJ failed to build a logical bridge to his conclusions because he summarily dismissed and mischaracterized the VE's testimony. Beyler asserts that the VE's testimony during cross-examination provided substantial evidence that the fast food services manager and receptionist positions were composite jobs and therefore the ALJ's failure to fully address the VE's testimony was reversible error. *See* ECF Doc. 8 at 12-13, 15-16. I disagree. During direct examination, the VE testified that Beyler's past relevant work could be described using one DOT job title, with her position at Bell Stores classified as a fast food services manager and her position at Eldorado as a receptionist – both jobs having been performed at a medium level of exertion. (Tr. 69). Contrary to Beyler's assertions and her characterization of the VE's testimony during cross-examination, the VE never made an explicit or otherwise clear determination that either the fast food services manager or receptionist positions were composite jobs. While the VE came close with regards to the fast food services manager position, he did not directly testify the position was a composite job. (Tr. 76). More importantly, the VE never mentioned the words "composite job" with regards to the receptionist position nor otherwise stated the position was a composite job. (Tr. 79). The VE's testimony is unclear at best. Although the VE's testimony could be interpreted as an implicit finding that Beyler's past positions at Bell Stores and Eldorado were composite jobs, it could also be

16

reasonably interpreted as merely providing DOT job titles that encompassed the various lifting and carrying duties performed by Beyler in her past work.

Importantly, one of the things the VE said he needed to know to consider the composite job issue was "how much of the time during the work day . . . did she do it?" (Tr. 75; *supra*, p. 4). Nothing in the record before the ALJ (or the court) appears to indicate how much time of the day Beyler spent doing the lifting activities at either Eldorado Stone or Bell Stores. Rather, Beyler has focused on how many days per week these things were done. It stands to reason that something that might be done an indeterminate number of minutes per day might not be a "main duty" of a job. The VE testimony did not clearly state that either of Beyler's jobs was a composite job, despite Beyler's creative arguments to the contrary.

As such, it was reasonable for the ALJ to rely on the VE's testimony during direct examination that Beyler's past relevant work could be classified under single DOT job titles and to consign the VE's cross-examination testimony to an *arguendo* discussion. And even if the VE's testimony could have been construed as providing evidence to support of a composite job finding: (i) it was the ALJ's responsibility to determine whether a position is a composite job; (ii) the ALJ's decision in this case plainly addressed Beyler's composite job argument and discounted the VE's construed testimony; and (iii) it was ultimately up to the ALJ to resolve any arguable ambiguities in the VE's testimony. *See Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) ("This court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job.") (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see also Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."). We must reject Beyler's implicit invitation to reweigh the evidence and draw our own conclusions regarding the composite job issue.

As discussed above, the ALJ's conclusions that the fast food services manager position and reception position were not composite jobs were supported by substantial evidence. Thus, regardless of how the VE's testimony is construed, the ALJ's conclusion should be affirmed, even if we might have reached a different conclusion. *See Sloan v. Saul*, 933 F.3d 946, 950-51 (8th Cir. 2019) (affirming an ALJ's determination that a claimant could perform her past relevant work as a receptionist, despite the VE testifying the position "look[ed] like a composite job" and the ALJ failing to explicitly address the composite job issue, because the conclusion was supported by substantial evidence that the position was a not a composite job). Although Beyler points to portions of the VE's testimony and other evidence on the record that would support her contention that her past work should be classified as composite jobs, the decision of the ALJ must be affirmed if it enjoys substantial support in the record. *Jones*, 336 F.3d at 476; *Rogers*, 486 F.3d at 241; *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"). This deference applies even if there is appreciable evidence supporting the opposite conclusion. *See Blakely*, 581 F.3d at 405. Here, the ALJ applied the proper legal standards for determining whether past relevant work qualified as a composite job (using the guidance provided under POMS DI 25005.20 and SSR 82-61), discussed the composite job issue at length in his decision, and reached a determination that was supported by substantial evidence on the record. Under these circumstances, the ALJ's findings should be affirmed.

To summarize, I find that the ALJ applied proper legal standards in conducting his independent analysis of Beyler's past work and determining whether any of her prior positions should be classified as a composite job. I conclude that evidence in the record indicating that Beyler's past positions at Bell Stores and Eldorado were *not* composite jobs and that Beyler was

able to perform her past work as a "Fast Food Services Manger" and "Receptionist" as they are performed in the national economy is more than sufficient to meet the very low "substantial evidence" threshold. *Biestek*, 139 S. Ct. at 1154. Furthermore, even if a preponderance of the evidence could support a finding that Beyler's past positions could be classified as composite jobs, the ALJ's decision cannot be second-guessed because it was reasonably drawn from the record and fell within the Commissioner's "zone of choice." *O'Brien*, 819 F. App'x at 416; *Jones*, 336 F.3d at 477; *Mullen*, 800 F.2d at 545. Consequently, because Beyler does not contest the RFC or the ALJ's determination that Beyler could perform her past relevant work as it is generally performed in the national economy, I recommend the Court affirm the ALJ's ultimate conclusion that Beyler is not disabled.

VI. **Recommendation**

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Beyler's applications for DIB and SSI be affirmed.

Dated: August 23, 2023

Thomas M. Parker
United States Magistrate Judge

---

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the

19

United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).